*J. R. Walker,* contra.

---

2713.   STAMPS & CO. *v.* FRUIT DISPATCH CO.

The evidence demanded the verdict as directed, and if any error of law was committed, it was immaterial.

DECIDED JANUARY 17, 1911.

Complaint; from city court of Floyd county—Judge Hamilton. May 23, 1910.

The Fruit Dispatch Company, a corporation, sued Stamps & Company, a partnership, on an open account for $396.48, besides interest, for a mixed car-load of cocoanuts and bananas. At the conclusion of the evidence the trial judge directed a verdict in favor of the plaintiff, for the full amount sued for. The defendant's motion for a new trial, which was overruled, contains, besides the general grounds, two special assignments of error, the first of which complains of the ruling of the court in admitting in evidence, over objection that they were "the rankest kind of hearsay evidence," the following answers to interrogatories propounded to the agent of the plaintiff: "Mr. Stamps called up our office by long distance phone from Rome, Georgia. I answered the phone and recognized Mr. Stamps' voice. When I found an order was to be given, I called Mr. Carter to the phone, and he took the order over the phone and called the same off to me, and I wrote the same down. The order was for 400 stems of bananas, weighing 14,155 pounds, at the price of $1.60 per hundred pounds, and for 5,000 cocoanuts, at $34 per thousand, f. o. b. Mobile, Alabama. I did not receive the

order, or any part of it, from Mr. Stamps, but took the same as it was called off to me from the phone by Mr. Carter. . . There was no guaranty of freight rates. Nothing was said about guaranteeing freight rates." The witness whose testimony was objected to was the resident manager of the Atlanta branch of the plaintiff corporation, and the Mr. Carter mentioned was the bookkeeper of the plaintiff. Defendants admitted giving the order for the cocoanuts, and made a continuing tender of the price of the cocoanuts. They also admitted giving the order for the bananas, but testified that the order for the bananas was given on the express condition that the freight rates on the mixed car-load of cocoanuts and bananas should be at car-load rates on the bananas with the cocoanuts. Stamps, one of the defendants, testified, that the cashier of the plaintiff told him that he thought he could get this rate for him, and that he, Stamps, told the cashier if he could, to let him know; that about a week after this conversation Mr. Carter, the bookkeeper, called him up and informed him that he could get the car-load rates on the mixed car, and the defendant told him "all right," that he would take one half of each, about fifty bags of cocoanuts and the remainder of the car in bananas. Stamps further testified, that when the car came, he took the cocoanuts out of the car and paid the freight on them; that the agent of the railroad demanded a greater rate on the bananas than the car-load rate of freight; that he offered the agent the amount of freight according to the car-load rates and according to the amount of freight designated and fixed in the bill of lading which he had in his possession; that the agent refused to take this rate, and he then refused to take the bananas, and left them in the possession of the railroad company; that he paid the freight on the cocoanuts according to the bill of lading, and tendered the freight called for on the bill for the bananas, and it was refused; that when the car-load of cocoanuts and bananas was received, finding that the rate of freight on the bananas was greater than he had agreed to pay, he called up Mr. Carter, the bookkeeper of the plaintiff, and told him that the car of bananas had been received, but that the railroad company refused to deliver them for the freight rate, and that Carter instructed him to refuse to take the bananas unless the railroad company accepted the freight as tendered, and said he would make the railroad company pay for them; and that, acting upon these instructions, he refused to take

the bananas, as the agent refused to let him take them out of the car unless he paid the full freight rate demanded.

The other assignment of error was as to the admission in evidence of a cipher code book, fixing and regulating the "conditions of sales of fruits between plaintiff and its customers," and the rate of freight to be paid by the customers. The motion for a new trial contains many objections to the reception of this cipher code book as evidence, but the only two relied upon in the argument or in the brief submitted to this court are that the order for the bananas was conditional, and did not fall within the terms of the code book, and that the alleged contract in the book was unilateral, and therefore not binding upon the defendants. The defendants admitted receiving the cipher code book from the plaintiff, and that they had for several years conducted business with the plaintiff according to this code book. The code book is long, containing many clauses, but the only portions pertinent to the question now under consideration are as follows: "Uniform conditions governing sales. In conformity with similar announcements heretofore made, the Fruit Dispatch Company (herein called the Dispatch Company) has established the following uniform conditions to govern all purchases of bananas and other fruit from it. 1. All bananas and fruit sold by the Dispatch Company delivered f. o. b. freight cars at the seaboard, with the exception of special sales provided for in clause No. 11 hereof." Clause number 11 is as follows: "Special sales may be made after the arrival of bananas or fruit at the final destination, to persons personally inspecting and accepting the same on the spot." Clause 12 is as follows: "Every order given to or for the Dispatch Company, whether by telephone, telegraph, in writing, or otherwise, shall be regarded as being made under and subject to the terms and conditions herein contained. Every purchase from the Dispatch Company of bananas or fruit, and every sale thereof by it, shall be upon and subject to the terms and conditions herein contained, in every respect, unless waived in writing, signed by the president or general manager of the Dispatch Company, it being expressly stated and understood that no officer, employee, or representative of the Dispatch Company, except only the president or the general manager, has any authority to make any contract or sale of bananas or fruit except upon and subject to said terms, conditions, and provisions." This contract is signed by the Fruit Dispatch

Company, by its president and general manager, and Stamps & Company signed, on the back of the book, an acknowledgment of the receipt by them of this code book of the Fruit Dispatch Company, and an agreement as follows: "The undersigned hereby assents to the same and notifies and directs the Fruit Dispatch Company that every order hereafter given to it, or to any of the officers or employees, for the purchase of bananas or fruit, by the undersigned, shall be deemed and construed to refer to and contain the uniform conditions governing sales as set forth in said code book, and hereby further and expressly agrees with the Fruit Dispatch Company that in consideration of the acceptance from the undersigned of any order or orders for bananas or fruit, all sales of bananas and fruit from the Fruit Dispatch Company to the undersigned shall be under and subject to the said terms, conditions, and provisions in every respect."

*Maddox & Doyal,* for plaintiffs in error.

*Lipscomb, Willingham & Wright,* contra.

HILL, C. J.   (After stating the foregoing facts.)

1.   It may be conceded that the testimony as to the order given by the plaintiff to the defendants over the telephone from Atlanta to Rome was, strictly speaking, hearsay, but certainly it is not of "the rankest kind of hearsay evidence," as contended by the learned counsel for the plaintiffs in error.   Taking the evidence all together, it is not without some probative value.   It shows that the person testifying,—Gordon, the manager of the Fruit Dispatch Company, —recognized the voice of Stamps, the senior member of the firm of Stamps & Company, who desired to give him an order, and that thereupon he called Carter, who was the bookkeeper and known by Stamps to be the bookkeeper, and Carter received from the telephone the order of Stamps & Company, and called it out to Gordon, who took it down as it was received and called out.   Of course, the testimony of Carter, who received the message, was the best evidence of what was said to him over the telephone by Stamps, but it is wholly improbable and unreasonable that Carter should have called out to Gordon a different message from that which he received. The case of *Planters Cotton Oil Co.* v. *Western Union Telegraph Co.,* 126 *Ga.* 621 (55 S. E. 495, 6 L. R. A. (N. S.) 1180), relied upon to show that this testimony was hearsay, is not exactly in point. That case was a suit for damages against the telegraph company,

for the failure to deliver a telegraphic message, and the Supreme Court held that it was necessary for the plaintiff to show that the message was in fact delivered for transmission, and that this was not accomplished by proof that the plaintiff's agent, in an attempt to deliver the message for transmission, used the telephone, calling upon the telephone company for a connection with the office of the telegraph company, and, upon being answered by one supposed to be in the telegraph office, asked, "Is that the Western Union Telegraph office?" and, upon being assured in the affirmative, repeated, to the person so answering, the message intended to be sent, *"it not appearing that the agent of the plaintiff recognized the voice of the person who answered him, as being the voice of one of the agents of the telegraph company, and it not being otherwise known to him or shown that the person to whom he was talking was the agent of the telegraph company."*

In the present case the evidence clearly shows that the plaintiff's manager recognized the voice of the defendant, and that the de-defendant knew that he was talking to the agent of the plaintiff in Atlanta. But this is immaterial, in view of the fact that the defendant Stamps admits giving the order to the plaintiff for the mixed car-load of cocoanuts and bananas. He insists, however, that although he did give the order, it was on condition that the freight required to be paid on the mixed car-load was to be the same rate of freight charged for car-loads. He admits receiving the cocoanuts and tendering the money for them according to his order, and that the bananas were shipped in the same car with the cocoanuts which he had ordered at the same time; and he testified that he declined to take them because of the alleged change in the freight rate, which he claims was a condition precedent to the making of the contract or the giving of the order. The plaintiff, as to this point, contends that nothing was said about freight rates, and that no guaranty as to freight rates was made when the order was given over the telephone. The plaintiff further contends, on this point, that the question of freight rates on shipments of fruit was already determined by written contract made with the defendants under which they had been operating for some years, and that none of its agents were authorized to change the terms and conditions of the contract as to freight rates, or in any other particular, except as provided in the cipher code book; that the defense urged, that the bookkeeper of

the plaintiff had authorized the defendants to refuse to accept the bananas unless the railroad company would accept freight on the bananas according to car-load rates, was expressly unauthorized and prohibited by the terms of the code book, and that as this was an interstate shipment, the rate of freight was fixed by the schedule files and printed under the act of Congress known as the "Hepburn bill." The question as to who shall pay the rate or as to where it shall be paid is determined by the written contract between the parties, under which all their business had theretofore been conducted. The objection urged against this contract that it was unilateral is not good. This is an executed contract, signed by both parties thereto, under which both parties had operated for years. The defendants in this case having made a written contract with the corporation in relation to uniform conditions governing transactions between them, and which was exhaustive on this subject, were bound by its express terms: "All bananas and fruit sold by the Dispatch Company delivered f. o. b. freight cars at the seaboard, with the exception of special sales provided for in clause No. 11 hereof." It is not contended that there was any special sale in this case, and the contract further expressly denies to any officer, employee, or representative of the Dispatch Company the right or authority to change any of its terms; declaring that only the president or the general manager, in writing, has such authority. Therefore, the effort of the bookkeeper of the Dispatch Company, if such effort was made as contended by the defendants, to change the terms of the contract by directing the defendants not to receive the bananas, was entirely without authority and nugatory. In other words, it seems clear, under the terms and conditions of the contract governing the shipment of the fruit and the relations of the defendants with the plaintiff in reference thereto, that no authority appears in the evidence for any change in the conditions governing sales so as to authorize any guaranty as to freight rates, and that the defendants, having signed a written contract with the Fruit Dispatch Company, and pledging themselves to abide by these conditions and accept all the fruit, cocoanuts, and bananas delivered "f. o. b. at the seaboard," were bound to receive the fruit at the point of destination and delivery, and the agent of the Dispatch Company had absolutely no right to advise the plaintiff to make any other disposition of the fruit after it arrived in the car at its destination in Rome. We think the

evidence as a whole, under the law applicable thereto, demanded a verdict for the plaintiff, and that the court did not err in so directing.                                          *Judgment affirmed.*